UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT WOODS,

                                  Movant,

                    -against-

UNITED STATES OF AMERICA,

                                  Respondent.

**OPINION AND ORDER**

25-CV-06292 (PMH)

20-CR-00626 (PMH)

PHILIP M. HALPERN, United States District Judge:

Robert Woods ("Woods") moves *pro se* under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (the "Petition"). Woods argues that his counsel provided constitutionally ineffective assistance because he: (1) failed to object to aggravated assault being treated as a predicate act for his racketeering conspiracy charge; (2) failed to object to the racketeering conspiracy and narcotics conspiracy charges as multiplicitous and a violation of Double Jeopardy; (3) failed to challenge his status as a career offender; and (4) failed to challenge the two-point enhancement for committing the instant offense while under a criminal justice sentence. (Doc. 1016, "Pet.").[1]

For the reasons set forth below, the motion for relief under 28 U.S.C. § 2255 is DENIED and the Petition is DISMISSED.

---

[1] Woods' motion was treated as a petition commencing a civil action, No. 25-CV-0629. Citations to the electronic docket in the criminal proceeding are referred to herein as "Doc."

## BACKGROUND[2]

Woods was a leader of a violent "Bloods" gang known as the Untouchable Gorilla Stone Nation ("Gorilla Stone"). (PSR ¶¶ 12, 41-42). The gang operated throughout New York, both inside and outside of prisons, and across other states including Florida and North Carolina. (*Id.* ¶ 12). Members of Gorilla Stone terrorized the communities in which it operated, engaging in acts of violence including murder, attempted murders, robberies, and a slashing. (*Id.* ¶¶ 13, 19). Members of Gorilla Stone were also heavily involved in narcotics trafficking, preying on vulnerable individuals in these communities. (*Id.* ¶¶ 13, 17). Woods was the "High," or second-in-command, for his cave in Gorilla Stone. (*Id.* ¶ 42).

In January 2018, Woods slashed an individual in the face in connection with a Gorilla Stone-related dispute with another gang. (*Id.* ¶ 41). Surveillance video showed Woods lacerating his victim outside a subway entrance in New York before hurriedly walking away. (*Id.*). The wound from the slashing stretched across the entire left side of the victim's face. (*Id.*). Woods also participated in the gang's distribution of crack and crack cocaine, targeting individuals in bars and clubs in Manhattan and Brooklyn, New York. (*Id.*). Woods was responsible for distributing approximately 3.4 kilograms of cocaine and possessing a firearm in furtherance of the narcotics trafficking. (*Id.*).

An indictment first issued in this case on or about November 23, 2020. (Doc. 2). On June 2, 2023, Woods appeared before this Court and pled guilty to Counts One and Twelve and the lesser-included offense of Count Sixteen of the Sixth Superseding Indictment pursuant to a written

---

[2] The Court draws the background facts principally from the Petition, the Government's opposition thereto (Doc. 1024, "Gov't Pet. Opp."), and Woods' reply papers (Doc. 1025, "Reply"), as well as the record of the underlying criminal proceeding, including the revised Presentence Investigation Report dated December 18, 2024, prepared by the Probation Office in connection with Woods' sentencing (Doc. 967, "PSR"). Citations to these materials correspond to the pagination generated by ECF.

plea agreement dated May 30, 2023 ("Plea Agreement"). (Doc. 807, "Plea Tr."; *see also* PSR ¶ 7). Count One charged Woods with participating in a racketeering conspiracy from at least in or about 2004 up to and including in or about December 2020, in violation of Title 18, United States Code, Section 1962(d); Count Twelve charged Woods with maiming and assaulting an individual with a dangerous weapon, in violation of Title 18, United States Code, Section 1959(a)(2); and the lesser-included offense of Count Sixteen charged Woods with conspiring to distribute and possess with intent to distribute 500 grams and more of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 846. (Docs. 245, 807).

After placing Woods under oath, the Court conducted a thorough allocution of him. (Plea Tr. at 4-6). Among other things, Woods affirmed that he had attended school through the twelfth grade and took some college classes and that in the past 24 hours, he had not consumed any drugs, alcohol, pills, or medicine. (*Id.* at 4-5). Woods further affirmed that his mind was clear and that he understood what was happening at the proceeding. (*Id.* at 5-6).

Woods confirmed that he had "enough time and opportunity" to discuss the case with his attorney and that he was satisfied with his attorney's representation of him. (*Id.* at 6). The Government and defense counsel likewise represented that they had no doubts as to Woods' competence to plead guilty. (*Id.*). Accordingly, the Court found that, on the basis of Woods' responses to the Court's questions, its observations of his demeanor, and the views of counsel, Woods was fully competent to enter an informed plea. (*Id.*).

Under the terms of the Plea Agreement which Woods signed on June 2, 2023 (Plea Agreement at 10), the Government, among other things, agreed to accept a guilty plea allocution from Woods on Counts One and Twelve and the lesser-included offense of Count Sixteen of the Sixth Superseding Indictment. (Plea Tr. at 10). Woods agreed in the Plea Agreement that the

predicate acts for the racketeering conspiracy were: (1) the conspiracy to distribute cocaine from in or around January 2018 up to and including in or around December 2020; and (2) the January 12, 2018 assault with a dangerous weapon in aid of racketeering. (Plea Agreement at 3).

The parties stipulated to a final offense level of 31 under the Guidelines. (Plea Agreement at 6). Woods further agreed that he was a career offender because his 2004 and 2006 convictions for robbery in the second degree constituted crimes of violence under U.S.S.G. § 4B1.2(a). (Plea Agreement at 5-6). Therefore, the parties agreed that because Woods was a career offender, his criminal history category was VI pursuant to U.S.S.G. § 4B1.1(b). (*Id.* at 6). The parties stipulated to a Stipulated Guidelines Range of 188 to 235 months' imprisonment, with a mandatory minimum term of 60 months' imprisonment on Count Sixteen. (*Id.*; Plea Tr. at 20).

Woods also stipulated in the Plea Agreement that he would "not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 188 to 235 months' imprisonment" with a mandatory minimum of 60 months' of imprisonment. (Plea Agreement at 8; Plea Tr. at 21). Woods was not waiving his rights, however, to assert claims for ineffective assistance of counsel. (Plea Agreement at 8).

At the change of plea hearing, the Court conducted a thorough colloquy pursuant to Federal Rule of Criminal Procedure 11 to determine whether the plea was knowing and voluntary and whether there was a factual basis for the plea. (*See generally* Plea Tr.). The Court confirmed that Woods understood the rights he was giving up by pleading guilty, and that he would be sentenced on the basis of his guilty plea. (*Id.* at 7-9). Woods acknowledged that he understood he was giving up those rights, except for his right to counsel. (*Id.* at 9). The Government then, at the Court's direction, set forth the elements of the offenses to which Woods was pleading guilty. (*Id.* at 11-

4

12). The Court advised Woods of the maximum penalties he would face as a result of his guilty plea and confirmed that he understood these penalties. (*Id.* at 13-15).

The Court confirmed that Woods understood that, when imposing a sentence, the Court would consider the Sentencing Guidelines along with the factors set forth in 18 U.S.C. § 3553(a), and could impose a sentence that was higher or lower than that called for by the Sentencing Guidelines. (*Id.* at 16-18). Woods confirmed that he understood that he would not be permitted to withdraw his guilty plea if the sentence differed from the Plea Agreement or from what he expected. (*Id.* at 18).

The Court next confirmed that Woods had read the Plea Agreement, had discussed "every aspect of it" with his attorney, and understood it fully. (*Id.* at 19). Woods swore that apart from the Plea Agreement, no one had made him any promises or used any threats, force, or coercion to induce him to plead guilty or to enter into the Plea Agreement. (*Id.* at 20). The Court further confirmed that Woods understood that he was giving up his right to appeal or otherwise attack or challenge his conviction and sentence, as long as his sentence was within or below the Stipulated Sentencing Range of 188 to 235 months of imprisonment. (*Id.* at 21).

The Government was asked to summarize its proof to ensure there was an adequate factual basis to support Woods' plea. (*Id.* at 24). The Government's proof included:

> First, Instagram evidence showing that this Defendant passed along graphic photos of a victim of a slashing to another gang leader; [s]econd, cooperator testimony regarding the Defendant's role as a leader in Gorilla Stone and his role in the charged slashing and its ties to a Gorilla Stone-related dispute with [an]other gang; [t]hird, wiretap testimony showing other gang members discussing this Defendant's role as a violent leader of a Gorilla Stone set; [f]ourth, evidence including seizure of drugs from this Defendant and other Gorilla Stone members demonstrating the widespread narcotics-trafficking enterprise Gorilla Stone engaged in; [a]nd fifth, evidence from this Defendant's cell phone showing: (1) his role as a leader in Gorilla Stone, (2) his ability to procure firearms for other members

of Gorilla Stone, and (3) his participation in acts of violence on behalf of the gang; [a]nd . . . text messages showing his own cocaine-distribution business.

(*Id.* at 24-25).

Woods affirmed that he heard the Government's summary of its proof, and that it was substantially accurate. (*Id.* at 25). Woods then made a factual allocution and confirmed that he was a member of Gorilla Stone from approximately 2018 to December 2020. (*Id.* at 25). He further confirmed that he agreed with others in the gang to distribute and to possess with the intent to distribute cocaine from at least in or about January 2018 until in or about December of 2020 while he was a member of Gorilla Stone. (*Id.* at 28-29, 31-32).

The Court found that Woods had voluntarily waived his rights, with an understanding of the consequences of his plea; that he had entered his plea knowingly and voluntarily; and that his plea was supported by an independent factual basis. (*Id.* at 33). The Court, accordingly, accepted the guilty plea. (*Id.*).

On March 5, 2024, Woods' attorney filed a sentencing memorandum advocating for a downward departure or variance based upon, among other reasons, the arguments that Woods: (i) was not a career offender; and (ii) should not receive a two-point enhancement for committing the offense while under community-based supervision. (Doc. 839). On March 6, 2024, the Government filed a letter requesting an adjournment of the sentencing date because the parties were conferring regarding Woods' intention to withdraw his sentencing submission to avoid advancing any arguments that might inadvertently breach the Plea Agreement. (Doc. 840). On March 27, 2024, Woods' attorney filed a letter confirming that Woods intended to abide by the Plea Agreement and he withdrew any objections to the PSR that were inconsistent with the Plea Agreement. (Doc. 846). He further agreed that his offense level was 31 and his criminal history

category was VI based on his status as a career offender, resulting in a Sentencing Guidelines Range of 188 to 235 months of imprisonment. (Doc. 846).

On July 25, 2024, Woods appeared before this Court for sentencing. ("Sent. Tr."). The Court found that, consistent with the Plea Agreement and PSR, the two predicate acts for the racketeering conspiracy included the assault with a dangerous weapon in aid of racketeering charged in Count Twelve and the narcotics conspiracy charged in Count Sixteen. (Sent. Tr. 4-5). The Court also found that Woods was a career offender because he was at least 18 years old at the time of the instant offense, the instant offense was a crime of violence or controlled substance offense, and Woods had at least two prior felony crimes of violence. (Sent. Tr. at 7). Specifically, on March 4, 2004, Woods was adjudicated a youthful offender after a plea of guilty to second degree robbery. (Sent. Tr. 7; PSR ¶ 74). On January 25, 2007, Woods was again convicted of second-degree robbery. (Sent. Tr. 8; PSR ¶ 75).

The Court found that the applicable offense level was 31. (Sent. Tr. at 7). The Court calculated that Woods had eight criminal history points from his three prior convictions, and one additional criminal history point for having committed the instant offense while under community-based supervision, resulting in nine criminal history points. (*Id.* at 7-8). Woods' status as a career offender, however, resulted in a criminal history category of VI. (*Id.* at 8). Accordingly, the Court found that, consistent with the Plea Agreement and the calculation set forth in the PSR, Woods' Sentencing Guidelines Range was calculated at 188 to 235 months based on a final offense level of 31 and a criminal history category of VI, with a mandatory minimum term of imprisonment of 60 months on Count Sixteen. (*Id.* at 8-11).

Woods argued that although he "was going to live up to the plea agreement," he was requesting a variance from the Sentencing Guidelines Range because he saved the life of a

corrections officer while incarcerated and he also served eight months of imprisonment in Rikers Island for arguably related conduct for criminal possession of heroin and marijuana. (*Id.* at 14-20). The Court explained that in fashioning an appropriate sentence it considered all of the Section 3553(a) factors. (*Id.* at 21). The Court balanced mitigating and aggravating factors, the need to promote respect for the law, the need for deterrence, and the need to avoid unwarranted sentencing disparities. (*Id.* at 25-29). The Court considered Woods' lack of youthful guidance, difficult childhood, history of drug use, physical condition, family ties, criminal history, and the conditions in jail in light of the COVID-19 pandemic. (*Id.* at 23-25). After considering the nature and circumstances of the offense, and Woods' history and characteristics, the Court sentenced Woods to the bottom of the Guidelines range—a total term of 188 months' imprisonment to be followed by five years of supervised release, as follows: 188 months on each of Counts One, Twelve and Sixteen of the Indictment to run concurrently, to be followed by three years of supervised release on Count One, five years of supervised release on Count Twelve and five years of supervised release on Count Sixteen, all to run concurrently. (*Id.* at 30).

The judgment of conviction was entered on July 26, 2024. (Doc. 939). Woods did not file a direct appeal. On July 28, 2025, Woods filed a Petition under 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence. (Doc. 1016). Woods signed the Petition on July 20, 2025. (*Id.*). The Court then issued an Order to Answer, directing the Government to respond to the Petition. (Doc. 1017). On September 30, 2025, the Government filed a memorandum opposing the motion pursuant to 28 U.S.C. § 2255. (Doc. 1024). Woods' reply papers in connection with the Petition were filed on October 21, 2025, and Woods' Motion was fully submitted that day. (Doc. 1025).

## STANDARD OF REVIEW

A prisoner in federal custody may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).[3]

"[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Sanders v. United States*, 1 Fed. App'x 57, 58 (2d Cir. 2001) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *United States v. Brickhouse*, No. 09-CR-01118, 2017 WL 1049509, at *4 (S.D.N.Y. Mar. 16, 2017). Further, to successfully challenge a guilty plea conviction under Federal Rule of Criminal Procedure 11, "the petitioner must demonstrate that the violation was prejudicial—where the error was not preserved, this requires the petitioner to show that 'the violation affected substantial rights and that there is a reasonable probability that, but for the error, he would not have entered the plea.'" *Zhang v. United States*, 506 F.3d 162, 168 (2d Cir. 2007) (quoting *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005)).

---

[3] Unless otherwise noted, all case quotations omit internal quotation marks, citations, alterations, and footnotes.

9

"A § 2255 petition may not be used as a substitute for direct appeal." *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993). "Where a criminal defendant has procedurally forfeited his claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the defendant can demonstrate either: (1) cause for failing to raise the issue, and prejudice resulting therefrom, or (2) actual innocence." *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1999). Ineffective assistance of counsel claims, however, "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, a *pro se* litigant is not exempt "from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

A hearing on a § 2255 petition is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "[A] hearing is not required where the petitioner's allegations are 'vague, conclusory, or palpably incredible.'" *Brickhouse*, 2017 WL 1049509, at *4 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). "[A] district court need not assume the credibility of factual assertions [in a habeas petition], as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising

10

detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).

## ANALYSIS

Woods seeks relief under 28 U.S.C. § 2255(b) on the grounds that his counsel was constitutionally ineffective because he: (1) failed to object to aggravated assault being treated as a predicate act for his racketeering conspiracy charge; (2) failed to object to the racketeering conspiracy and narcotics conspiracy charges as multiplicitous and a violation of Double Jeopardy; (3) failed to challenge Woods' status as a career offender; and (4) failed to challenge the two-point enhancement for committing the offense while under a criminal justice sentence.

The merits of ineffective assistance of counsel claims are evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard requires Woods to first "show that counsel's performance was deficient," in that it fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 687-90. "Second, the defendant must show that the deficient performance prejudiced the defense," meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. There is a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance," *id.* at 689, "and it is Petitioner's burden to demonstrate 'that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.'" *United States v. Yeagley*, No. 08-CR-00707, 2017 WL 76903, at *7 (S.D.N.Y. Jan. 3, 2017) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)).

As set forth below, the record in this case is more than sufficient to resolve the disputed factual issues without a hearing and fully supports a denial of the Petition.

11

I.    RICO Predicates

Woods argues that his counsel was ineffective because he failed to raise the argument that assault in aid of racketeering under 18 U.S.C. § 1959 is not a predicate act for racketeering conspiracy since it is not an enumerated act under 18 U.S.C. § 1961. Therefore, Woods claims that he only pled guilty to one racketeering act. (Pet. at 4). The government does not directly respond to Woods' argument in its brief that assault is not a predicate racketeering act. Woods is correct that assault does not constitute a predicate racketeering act under 18 U.S.C. § 1961(1). *See United States v. Hopper*, 19-3087-cr, 2022 WL 1566258, at *2 (2d Cir. May 17, 2022) (holding that "[a]ggravated assault does not constitute a predicate racketeering act under 18 U.S.C. § 1961(1)."; *Miller v. Carpinello*, No. 06-CV-12940, 2007 WL 4207282, at *7 (S.D.N.Y. Nov. 20, 2007) ("18 U.S.C. § 1959 is not listed in 18 U.S.C. 1961(1), and thus a violation of it does not constitute a RICO predicate act."). Nonetheless, Woods' ineffective assistance of counsel claim still fails.

"RICO conspiracy requires proof: (a) of an agreement to join a racketeering scheme, (b) of the defendant's knowing engagement in the scheme with the intent that its overall goals be effectuated, and (c) that the scheme involved, or by agreement between any members of the conspiracy was intended to involve, two or more predicate acts of racketeering." *United States v. Zemlyansky*, 908 F.3d 1, 11 (2d Cir. 2018). It is well established that "[c]onspiracies to violate the controlled substances law, if proven, are properly chargeable as predicate acts defined under RICO." *United States v. Awad*, 518 F. Supp. 2d 577, 583 (S.D.N.Y. 2007); *see also United States v. Jones*, 482 F.3d 60, 71 (2d Cir. 2006) (treating narcotics conspiracy as a RICO predicate act).

Woods admitted to participating in a years-long drug trafficking conspiracy with Gorilla Stone members from at least January 2018 to December 2020 involving 3.4 kilograms of cocaine. (PSR ¶ 43; Plea Tr. at 28-32). Woods further engaged in a "steady drumbeat of cocaine and crack

12

cocaine trafficking" and possessed a firearm in furtherance of the narcotics trafficking. (PSR ¶ 43). Woods' conduct constitutes a sufficient pattern of racketeering activity to support his RICO conviction on Count One. *See United States v. Johnson*, 861 F. App'x 483, 488 (2d Cir. 2021) (affirming racketeering conspiracy conviction premised on the defendant's participation "in a pattern of racketeering based on the narcotics trafficking crimes alone" where he purchased 10 grams of heroin to resell and sold crack in an area frequented by his fellow gang members); *United States v. Darden*, 70 F.3d 1507, 1524-25 (8th Cir. 1995) (the defendant engaged in a pattern of racketeering by participating in a narcotics conspiracy and possessing with the intent to distribute controlled substances as part of his participation in the drug trafficking enterprise).

Woods also cannot establish any prejudice from the racketeering conspiracy conviction. Woods' offense level calculation was based on the narcotics conspiracy conviction and his proper status as a career offender, as discussed *supra*. (Sent. Tr. at 7; PSR ¶ 69). Woods' offense level as a career offender was 34 pursuant to U.S.S.G. § 4B1.1(b)(2) so his offense level of 33 for the racketeering conspiracy did not factor into his total offense level or guidelines calculation. (Sent. Tr. at 7-9). Based on his status as a career offender, and taking into account his acceptance of responsibility, Woods' final offense level was 31 at criminal history category VI, resulting in a sentencing range of 188-235 months of imprisonment with a mandatory minimum term of imprisonment of 60 months on Count 16. (*Id.*). Even without the racketeering conspiracy count, the Court was required to consider Woods' assault and narcotics conspiracy convictions as part of its 3553(a) analysis. Therefore, "even if his counsel had argued successfully that the evidence was insufficient to convict [Woods] of [racketeering conspiracy], there would have been no impact on this Court's calculation under the Sentencing Guidelines. Thus, [Woods] cannot demonstrate that

13

the outcome of the proceeding would have been different." *Ferrerio v. United States*, No. 09-CV-05187, 2009 WL 5173931, at *2 (S.D.N.Y. Dec. 30, 2009).

II.    Double Jeopardy

Woods contends that his prosecution violated the bar against Double Jeopardy. (Pet. at 5; Reply at 5-13). Specifically, Woods argues that his lawyer was deficient because he failed to challenge the multiplicitous racketeering conspiracy and narcotics conspiracy counts of the Indictment when there was only one conspiratorial agreement. In addition, Woods argues that the predicate acts of the racketeering conspiracy improperly included the narcotics conspiracy and assault and maiming in aid of racketeering that are charged in separate counts. (*Id.*).

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause "confers its protections in three different situations—where there is a second prosecution for the same offense after acquittal of that offense; where there is a second prosecution for the same offense after conviction of the offense; and where there are multiple punishments for the same offense." *United States v. Estrada*, 320 F.3d 173, 180 (2d Cir. 2003). The third situation is at issue in Woods' Petition.

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999). "In assessing whether a defendant is impermissibly charged with essentially the same offense more than once in violation of the Double Jeopardy Clause of the Constitution, the touchstone is whether Congress intended to authorize separate punishments for the offensive conduct under separate statutes." *Id.* at 146. "To assess whether the two offenses charged separately in the indictment are really one offense charged twice,

14

. . . [courts] examine[] whether each charged offense contains an element not contained in the other charged offense. If there is an element in each offense that is not contained in the other, they are not the same offense for purposes of double jeopardy, and they can both be prosecuted." *Id.*[4]

The RICO conspiracy under § 1962(d) charged in Count One and the conspiracy to distribute controlled substances under § 846 charged in Count Sixteen constitute different offenses. To prove a RICO conspiracy under § 1962(d), the government must prove "an enterprise and a pattern of racketeering activity." *United States v. Kelly*, 128 F.4th 387, 408 (2d Cir. 2025). To prove a narcotics conspiracy under § 846, the government must prove "(1) the existence of the conspiracy charged; (2) that the defendant had knowledge of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Abarca*, 22 F.4th 58, 63 (2d Cir. 2021). The government does not need to prove an overt act in furtherance of the conspiracy. *United States v. Anderson*, 747 F.3d 51, 60 n.7 (2d Cir. 2014). Because a RICO conspiracy and a narcotics conspiracy each "requires proof of a fact that the other does not . . . the *Blockburger* test is satisfied." *United States v. Thomas*, 757 F.2d 1359, 1371 (2d Cir. 1985).

The Second Circuit has also held that "cumulative punishments for those convicted of a § 846 narcotics conspiracy and a § 1962(d) RICO conspiracy is proper." *Id.* RICO conspiracies and narcotics conspiracies "are in separate statutes and are intended to deter two kinds of activity: racketeering on the one hand and narcotics violations on the other." *Id.* Similarly, RICO conspiracies and conspiracies to commit violent crimes in aid of racketeering under § 1959(a) also "require proof of different elements and, therefore, are legally distinct offenses not implicating double jeopardy concerns." *See United States v. Basciano*, 599 F.3d 184, 198 (2d Cir. 2010).

---

[4] This is known as the "same elements" test or the "*Blockburger*" test. *See Blockburger v. United States*, 284 U.S. 299 (1932).

15

The racketeering conspiracy, narcotics conspiracy and assault and maiming in aid of racketeering were properly charged in separate counts as distinct offenses not implicating Double Jeopardy concerns. Therefore, Woods' counsel was not ineffective for failing to raise a Double Jeopardy argument. *See United States v. Regalado*, 518 F.3d 143, 151 n. 3 (2d Cir. 2008) ([F]ailure to make a meritless argument does not amount to ineffective assistance [of counsel]."); *Santana v. United States*, No. 17-CR-00438, 2022 WL 2981365, at *6 (S.D.N.Y. July 28, 2022) ("Failure to advise of a double jeopardy claim does not constitute ineffective assistance of counsel if there is no merit to [the] double jeopardy argument.").

III.    Career Offender

Woods argues that his counsel was ineffective for failing to challenge his status as a career offender based on his 2004 youthful offender conviction for Robbery in the Second Degree. (Pet. at 7; Reply at 18; PSR ¶ 74). Woods further argues that this robbery conviction does not constitute a crime of violence. (Reply at 18). On March 4, 2004, at the age of 15, Woods was adjudicated a youthful offender following his guilty plea to Robbery in the Second Degree. (PSR ¶ 74). At the age of 16, Woods was sentenced to 5 years' probation and three months' imprisonment. (*Id.*). On February 7, 2007, Woods was sentenced to one to three years' imprisonment for violating probation. (*Id.*).

"Under New York law, a sixteen, seventeen, or eighteen year-old youth, who meets certain conditions and is convicted as an adult, may be adjudicated a youthful offender, thereby vacating and replacing his conviction with a youthful offender finding." *United States v. Jones*, 415 F.3d 256, 260 (2d Cir. 2005) (citing N.Y. Crim. Proc. Law §§ 720.10(1)-(2), 720.20(1)-(3)). "[W]here, as here, a defendant was tried and convicted in an adult court and served his sentence in an adult prison, his New York State youthful offender adjudication is a predicate conviction under the

16

Career Offender Guideline." *United States v. Felder*, 760 F. App'x 74, 76 (2d Cir. 2019) (citing *United States v. Jones*, 415 F.3d at 261)). In addition, Woods' New York robbery conviction constitutes a crime of violence. *See United States v. Pereira-Gomez*, 903 F.3d 155, 159, 166 (2d Cir. 2018) (holding that all degrees of New York robbery as defined in the Penal Law qualify as crimes of violence under the Sentencing Guidelines). Therefore, Woods' ineffective assistance of counsel claim premised on his career offender status is without merit.

IV.    Enhancement for Committing Offense While Under a Criminal Justice Sentence

Finally, Woods argues that his counsel was ineffective for not challenging the enhancement in his criminal history calculation for committing the offense while under community-based supervision.[5] The Court added one point to Woods' criminal history because he committed the instant offense while under community-based supervision which increased his criminal history points from 8 to 9. (Sent. Tr. 9-10). The Court's ruling had no impact on Woods' criminal history category, however, because his criminal history category of VI was based on his status as a career offender. (*Id.*). Accordingly, Woods cannot demonstrate any prejudice from his counsel's failure to object to any alleged error in his criminal history score. *See Clark v. Stinson*, 214 F.3d 315, 321 (2d Cir. 2000) (stating that a petitioner cannot prevail on an ineffective assistance of counsel claim unless he can prove prejudice by showing "that there is a 'reasonable probability' that, but for the deficiency, 'the result of the proceeding would have been different.'" (quoting *Strickland*, 466 U.S. at 694)).

---

[5] Woods argues that he received a two-point enhancement under § 4A1.1(d). (Pet. at 8). The Court, however, only added a one-point enhancement pursuant to § 4A1.1(e) in the 2024 Guidelines Manual that was in effect at the time of sentencing. (Sent. Tr. at 10-11; PSR ¶ 78).

17

V.    An Evidentiary Hearing is Not Warranted

Section 2255 requires a hearing to resolve disputed issues of fact "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Woods is entitled to a hearing only if he establishes a plausible claim of ineffective assistance of counsel. *See Puglisi*, 586 F.3d at 213. Under the circumstances, and as set forth above, the parties' written submissions and the record in this case are more than sufficient and uncontroverted to resolve the issues raised by Woods without a hearing and fully supports a denial of the Petition. *See Orbach v. United States*, No. 11-CR-00111, 2017 WL 5632815, at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled to relief on any theory presented to this Court"); *United States v. Robinson*, No. 20-CR-00415, 2025 WL 1603916, at *3 (S.D.N.Y. June 6, 2025) ("[T]he Court concludes that the parties' written submissions are sufficient to decide [petitioner's] motion, and that no hearing is required.").

## CONCLUSION

Based on the foregoing, Woods' motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence is DENIED and no hearing is necessary.

As Woods has not made a substantial showing of a denial of a constitutional right, a Certificate of Appealability shall not be issued. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111-12 (2d Cir. 2000). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close the civil case pending under Docket No. 25-CV-06292. The Clerk of the Court is

18

further directed to terminate the motion pending in the criminal matter, Docket No. 20-CR-00626

(Doc. 1016), and to mail a copy of this Opinion and Order to Woods at the address stated on the

civil docket: #19824-509, F.C.I. Hazelton, P.O. Box 5000, Bruceton, WV 26525.

**SO ORDERED:**

Dated:  White Plains, New York
            May 14, 2026

_____
Philip M. Halpern
United States District Judge